For plaintiff: George F. Troy.

For defendant: James E. Brennan.

Augustino Chiaschini
et ux.
vs.　　　　　Law No. 88473.
Hormidas Plant

DECISION.

April 7, 1933.

JOSLIN, J. Heard by the Court without the intervention of a jury.

This is an action of trespass on the case for negligence and is brought by

the plaintiffs to recover damages for the alleged wrongful death of their minor son. The plaintiffs are the beneficiaries of their son's estate and they sue by virtue of the provisions of Sec. 14, Chap. 333 of the General Laws 1923, there being no executor or administrator.

On November 26, 1931, at about 7:30 A. M., Harry Chiaschini. the 13-year-old son of the plaintiffs, was riding upon the right running-board of a motor truck operated by the defendant while engaged in the business of distributing milk along his milk route in Manville, R. I. The truck was proceeding southerly on Central Street and turned east into Winter Street. Just before this turn or at the turn, the plaintiffs' son fell off the running-board onto the street and received injuries from which he later died.

Central Street runs north and south; Winter Street runs east and west. The Court saw the truck and, accompanied by counsel, went over the route and viewed the scene of the accident.

The declaration is in three counts. They charge negligence of the defendant in his operation of the truck, and that the defendant violated the statute by "employing, permitting or suffering" the plaintiffs' son to engage or work in his said business.

The plaintiffs' case consisted of statements alleged to have been made by the boy to his father just before he lapsed into unconsciousness from which he never recovered, together with the testimony of the witnesses, Oscar Major, Luigi Biagetti and Guilio Palozini.

The father testified that Harry returned home immediately after the accident; that he began to vomit and complained of headache; that, while in this condition, the boy told him that the defendant had ordered him and "another boy" (Luigi Biagetti) to take two bottles of milk from the truck and deliver them to certain customers;

and that, as he had his hand on one of the bottles, the truck, travelling at a fast rate of speed, turned into Winter Street and he was thrown off. The boy was taken to the Woonsocket Hospital where he died two days later.

Oscar Major, who was standing in a position to see what happened, testified he saw the truck just when the boy was falling off, at which time it was travelling at the rate of four or five miles per hour.

Luigi Biagetti was the other boy on the truck. He is now about fifteen years of age. He was standing on the left running-board of the truck. Called by the plaintiffs, he testified that he had been in the employ of the defendant for about a year previous to the accident; that he was a cousin and pal of the deceased boy; that the truck had stopped at Toupin's on Central Street several hundred feet northerly from Winter Street, and was about to start up, with the defendant at the wheel; that the plaintiffs' son unexpectedly came running along and got onto the right running-board; that the defendant, who was then seated in the closed cab of the truck, did not see Harry and did not know that he had boarded the truck; that the truck approached the intersection of Winter Street going at the rate of four to five miles per hour; that as the truck was turning into Winter Street Harry fell off; that the truck continued; that he jumped off and went to Harry's assistance; that Harry left to go to his home; and that he (Luigi) returned to the truck which, in the meantime, had made its usual stop at Bergeron's on Winter street, possibly two hundred feet beyond the point of the accident.

The last witness for the plaintiffs, Guilio Palozini, testified he had seen the boy on the truck ten times before the day in question; that on one occasion he saw the truck go by Harry's house and heard the defendant call to Harry to "Come on, jump on, Harry",

and that Harry did jump on. He also said that he saw Harry deliver milk. He did not see him on the day of the accident.

This was all the testimony on the question of liability produced by the plaintiffs when they rested their case.

The defendant maintained that he did not employ Harry; that he did not invite him upon the truck; that he did not know that the boy had been on the truck on the day in question nor that he was on the truck at the time of the accident; and that he first learned of the accident two days thereafter, whereupon he reported to the police and began an investigation. Furthermore, the defendant maintained that he did not know the boy although he had seen him once at the milk farm.

Shortly after the close of the case, upon motion of the plaintiffs, the Court ordered the case reopened. Testimony of the plaintiffs' additional witnesses, Campanelli and Letoile, was then taken.

These two witnesses are 14 and 19 years of age respectively. Their testimony did not in any way touch the events of the day of the accident. It was in the nature of rebuttal to the defendant's denials. Campanelli stated that the defendant knew Harry well; that he and Harry had both worked for the defendant at the same time and that he had seen Harry actually deliver milk. Letoile stated that Harry helped him on the defendant's farm; and that he saw the defendant talking with Harry, although he had never seen Harry on the truck.

The first contention of the plaintiffs is that the defendant was negligent in his operation of the truck. According to the plaintiffs' own witnesses (Major and Biagetti), the defendant was travelling at a slow rate of speed. There is nothing credible in the testimony from which the Court can find any negligence on the part of the defendant in his operation of the truck, either by way of excessive speed or otherwise.

The action is based principally upon the charge that the defendant violated the statute by employing, permitting or suffering the plaintiffs' son to work on or about his truck while engaged in the business of distributing milk along his milk route, and that while so employed or engaged, the plaintiffs' son received the injuries which proved fatal.

The statute in question is Clause 1, Section 1, Ch. 85 of the General Laws 1923, as amended by Ch. 1222 of the Public Laws 1928, the pertinent part of which reads:

"* * * no child under fifteen years of age shall be employed or permitted or suffered to work * * *"

Did the defendant, on the date of the accident, employ the plaintiff's son; if not, did he permit or suffer the plaintiffs' son to be on the truck. In either event, the plaintiffs maintain that such a violation is negligence per se.

First, as to employment. There is no direct evidence of any employment. Nor is there evidence of circumstances which would reasonably lead to the conclusion that there had been an employment, or from which an employment could reasonably be inferred. Had there been such an employment by the defendant, the parents undoubtedly would have known about it. While compensation in some form for the boy's work is not absolutely necessary, it is highly probable there would have been some. The mother did not testify. The father did, but gave no evidence whatever as to any employment or any compensation. The Court must conclude that there was no employment.

Secondly, did the defendant permit or suffer the plaintiffs' son upon the truck? There is no direct evidence to this effect except the testimony of the father that the boy told him that the

defendant "ordered me and the other boy to take two quarts of milk * * * and bring it to the families, and * * * the truck turned the curve fast and I was thrown away from the truck". This testimony, though hearsay, was admitted by the authority of Chap. 1048, Public Laws 1927. It includes the statement, credited to the boy, of a high speed by the defendant. In the light of all the other testimony from both sides in respect to the very slow speed of the car, there is manifestly an error either in the boy's statement or in the father's recital when he quotes the boy as having said: "the truck turned the curve fast". Harry is quoted by his father as having referred to Luigi Biagetti as "the other boy" on the truck. It is improbable that Harry would have used such an expression when referring to his cousin and pal. These two instances are sufficient to illustrate the importance of carefully examining such a statement before accepting it at face value.

The defendant stated that to his knowledge the boy was never upon the truck. The plaintiffs attack this statement by the testimony of Palozini (above referred to) and of the two young men, Campanelli and Letoile, at the reopened trial.

The Court cannot take seriously the testimony of the latter two. They formerly worked for the defendant and were discharged for allegedly wrong conduct. They admitted that they were unfriendly. They were not convincing and they did not impress the Court favorably. As opposed to this character of evidence, the defendant presented his own son and Alvero Biagetti, who corroborated him in many respects. Furthermore, if Harry had been upon the truck many times, as claimed by the plaintiffs, many people would have seen him, as on the route over which the defendant travelled there were many inhabited houses. The boy would have delivered milk to some persons. No evidence from anyone along the route was produced.

Even if it were proved that the boy occasionally worked on the defendant's farm and that he occasionally worked on the truck, there is absolutely no testimony, other than the hearsay testimony of the father above discussed, that the defendant had any knowledge of the boy's presence on the truck on the day of the accident. Indeed, the other boy on the truck denied it.

From a consideration of all the evidence, whether or not herein particularly discussed, the Court is of the opinion that the plaintiffs have failed to sustain the burden of proving that their boy was in the defendant's employ, or that the defendant permitted or suffered him to be upon the truck on the morning of the accident.

In view of the foregoing conclusions, it is unnecessary to consider the question as to whether, if there were a violation of the statute by the defendant, it would be negligence per se.

In these circumstances, decision must be for the defendant.

For plaintiff: Luigi DePasquale, P. S. Knauer.

For defendant: Eugene L. Jalbert.